UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Bismillah                                                Case No. 3:16-cv-1374
aka Phillip Douglas Jacobs,

        Plaintiff

        v.                                       MEMORANDUM OPINION

Gary C. Mohr, et al.,

        Defendants

This matter is before me on Defendants' motion to compel immediate payment of full filing fees and for related relief under the "three strikes" provision of the Prison Litigation Reform Act. (Doc. No. 30). Pro se Plaintiff Bismillah responded and moved for sanctions. (Doc. No. 31). Defendants replied, though they did so after the time set for such reply. (Doc. No. 36). And Bismillah filed a sur-reply. (Doc. No. 37). Defendants then filed a motion asking that I accept their reply as timely filed. (Doc. No. 39).

## BACKGROUND

Bismillah, a state prisoner at Marion Correctional Institution ("MCI"), filed this civil rights action under 42 U.S.C. § 1983 against Defendants Gary C. Mohr, A. Bender, Ohio State University Hospital, Jason Bunting, Wampler, Dr. Ralph Lyons, Sgt. Griffith, Crawford, James Ferguson, Dr. Khan, Polly Schmaltz, Nurse Sloan, Nurse Metz, and Jane Doe. (Doc. No. 1). Bismillah alleges several violations of his rights, including deliberate indifference, disproportionate punishment, discriminatory disciplinary tactics, retaliation, and conspiratorial retaliation. (Id. at 11-16).

## DISCUSSION

Defendants filed their motion pursuant to the PLRA's "three strikes" rule seeking revocation of Bismillah's in forma pauperis status and an order requiring him to immediately pay the full filing fees due on this case or an order of dismissal. (Doc. No. 30 at 3-4).

Bismillah opposes, claiming he falls under the exception to the "three strikes" rule because he is in imminent danger of serious physical injury, as alleged in his complaint. (Doc. No. 31 at 2; *see* Doc. No. 1 at 8-9). Bismillah therefore claims Defendants have filed their motion in bad faith, and he requests sanctions in the amount of $300 per day for every day Defendants' motion remains pending. (Doc. No. 31 at 3).

Defendants filed a combined reply to their motion and a response to Bismillah's motion. (Doc. No. 36). Defendants filed their motion late and ask me to accept their filing, claiming excusable neglect. (*Id.* at 3; Doc. No. 39). Defendants argue sanctions are inappropriate, as they did not file their motion in bad faith, their motion is warranted by law, and Bismillah did not follow proper procedures in filing for sanctions. (Doc. No. 36 at 8).

Finally, Bismillah argues in his sur-reply that I should not accept Defendants' untimely reply and instead find they waived the right to oppose his motion for sanctions. (Doc. No. 37 at 1). Bismillah further argues that because he was already allowed to proceed in forma pauperis, his rights have vested and collateral estoppel is now invoked. (*Id.*).

**Defendants' Untimely Reply**

Defendants originally moved for an extension of time to file their reply to their motion for revocation of Bismillah's pauper status and response to Bismillah's motion for sanctions. (Doc. No. 32). I granted the motion, setting their filing deadline as June 16, 2017. (Doc. No. 33). Defendants filed their reply and response on June 19, 2017. (Doc. No. 36).

Civil Rule 6(b)(1)(B) provides I may, for good cause shown, extend the time for Defendants to file their reply, even after they have missed the deadline, if I find they did so because of excusable

2

neglect. The determination of excusable neglect is "an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). These relevant circumstances include the danger of prejudice to the non-moving party; the length of the delay and its potential impact on judicial proceedings; the reason for the delay, including the extent to which it was in the reasonable control of the movant; and whether the movant acted in good faith. *Id.*

Counsel for Defendants filed the reply/response on July 19, three calendar days after his filing deadline, but only one business day after the deadline. Given the short delay, there was little-to-no impact on judicial proceedings in this case. I also find no prejudice to Bismillah due to this delay. The delay was short, and even so, had Bismillah needed additional time to file his sur-reply regarding his motion for sanctions, he need only have asked.

As for the reason for the delay, defense counsel explains he carries a full caseload and that at the time the filing in this case was due, he was simultaneously entrenched in preparations for filing dispositive motions in two cases that required extensive review of medical records and other discovery. (Doc. No. 39 at 4).

I appreciate that counsel carries a full caseload, but he is ultimately responsible for managing his time with respect to those cases. And as I said above, like Bismillah, if he needed more time to respond, he need only have asked. Regardless, I see no reason to find counsel acted in bad faith. He was engaged in complex and extensive work on other cases, and he filed the reply in this case on the next business day. As such, I grant Defendants' motion and accept their reply/response as timely filed. (Doc. No. 39).

**Bismillah's Pauper Status**

On June 6, 2016, Bismillah filed his complaint and moved to proceed in forma pauperis. (Doc. Nos. 1 & 2). That motion was granted pursuant to 28 U.S.C. § 1915(b). (Doc. No. 4). I now

find it appropriate to revoke Bismillah's in forma pauperis status pursuant to the "three strikes" provision of the PLRA.

Proceeding in forma pauperis is a privilege, not a right. 28 U.S.C. § 1915(a)(1); *Childs v. Pellegrin*, 822 F.2d 1382, 1384 (6th Cir. 1987). "[I]f the privilege of proceeding *in forma pauperis* is abused, a court may revoke this status." *Gabel v. Hudson*, No. 2:14-cv-1057, 2014 WL 7183940, at *1 (S.D. Ohio Dec. 16, 2014), *report & recommendation adopted by* 2015 WL 224975 (S.D. Ohio Jan. 15, 2015); *see also Armstrong v. Brunsman*, No. 1:12-CV-00132, 2012 WL 6057578 (S.D. Ohio Dec. 6, 2012) (revoking *in forma pauperis* status and ordering payment within 14 days). "[I]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding [in forma pauperis] if the prisoner has, on [three] or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it was frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Even cases that were dismissed prior to the PLRA's enactment count as strikes. *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998).

Bismillah does not deny having filed at least twenty-seven lawsuits. Indeed, I take judicial notice of three of his previous cases that were dismissed for being frivolous, malicious, or failing to state a claim[1]: (1) *Jacobs v. Hall*, No. 3:08-cv-1262 (N.D. Ohio); (2) *Jacobs v. Wilkinson*, No. 3:03-cv-7028 (N.D. Ohio); and (3) *Jacobs v. Wilkinson*, No. 1:96-cv-1133 (S.D. Ohio). Bismillah therefore has three strikes. In fact, Bismillah has previously been denied pauper status or had his pauper status revoked under the "three strikes" provision. *See Jacobs v. Mohr, et al.*, No. 3:11-cv-2294 (N.D. Ohio); *Jacobs v. Collins*, No. 2:09-cv-00282, 2009 WL 2169051 (S.D. Ohio July 16, 2009).

---

[1] Under Federal Rule of Evidence 201, I may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." In this case, I may take judicial notice of proceedings in courts of record. *Grenader v. Public Bank*, 417 F.2d 75, 82 (6th Cir. 1969).

But Bismillah claims he qualifies for the imminent danger exception to the "three strikes" rule. (Doc. No. 31 at 1-2). The imminent danger exception is "a pleading requirement subject to the ordinary principles of notice pleading." *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 585 (6th Cir. 2013) (quotation marks omitted). And because Bismillah is a pro se plaintiff, I must liberally construe his complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

To successfully claim this exception, Bismillah must sufficiently plead that he was under an existing danger at the time he filed his complaint. *Vandiver*, 727 F.3d at 585. The "threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Id.* (quotation marks omitted). A plaintiff's allegations of past dangers are "insufficient to establish the exception." *Id.* And "[t]he allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists." *Id.*

Bismillah has health issues regarding his heart, such that he had eighteen stents implanted by the time he filed his complaint. (Doc. No. 1 at 8). Bismillah alleges the existence of an "all-embracing conspiracy" that began in 2013, the object of which was to alter his medical records such that he could be placed in a second-floor area of MCI known as the Honor Camp. (*Id.* at 3). Bismillah was eventually removed from the Honor Camp and placed in "the Hole" in 2014. (*Id.*).

Bismillah also claims Defendants previously used "lawful disciplinary process [sic] and procedures in a manner to unlawfully cause [him] serious injury and threat of death," causing him to be placed in segregation for eleven days in May 2014. (*Id.* at 14). During this time, Bismillah states he was denied his heart medications. (*Id.*).

Bismillah then alleges the existence of a new scheme against him. He alleges several of the defendants conspired in March 2016 to punish him pursuant to an "unconstitutional" conduct report. (*Id.* at 4). The alleged purpose of this scheme was to place Bismillah in segregation in order to aggravate his health issue. (*Id.* at 5). Bismillah was apparently placed in segregation as a result of this conduct report. (*Id.*).

5

Bismillah claims Defendants then planned to give him a bed assignment following his release from segregation, only to move him a few days later to accommodate a white prisoner. (*Id.*). Bismillah says he refused the new bed assignment on grounds of racial discrimination and chest pains from having to repeatedly move beds. (*Id.*). This refusal resulted in a rule violation and more time in segregation. (*Id.*).

In April 2016, Bismillah received his eighteenth stent. He was admitted to the hospital on or about April 25, 2016, and released on April 29, 2016. (Doc. No. 1-1). He claims that upon his return from the hospital, he was assigned to a new bed because his original bed had been given to a white prisoner. (Doc. No. 1 at 5).

Bismillah claims he suffered another bed move two days after his return from the hospital, due to racially disparate treatment. (*Id.*). He objected to the move, saying he should be given his original bed back because he was still healing from his stent implant. (*Id.*). He was told to move beds or go to segregation, and he "agreed to go to isolation once again." (*Id.* at 5-6).

In a subsequent section of his complaint, Bismillah states that this bed move was ordered on May 10, 2016, and at that time, he went to the officer's desk and asked to go back to the infirmary, because he was not feeling up to another bed move. (*Id.* at 8). Bismillah claims his request to go to the infirmary was "twisted" into him requesting to go to segregation. (*Id.*). So he was sent to segregation, despite having a medical classification of critical. (*Id.*).

On or about May 12, 2016, while he was in isolation, Bismillah experienced severe chest pains. (*Id.* at 6). He sought medical attention, and when Defendants Gary Mohr and Jason Bunting arrived to assess him, they left him lying there. (*Id.*). After nearly eight hours had passed, Bismillah had his cellmate call for help again. (*Id.*). A new medical team responded, and Bismillah was sent to the hospital. (*Id.*).

6

Later in his complaint, Bismillah alleges that Defendant Nurse Sloan caused a forty-eight hour delay in his release from isolation. (*Id.* at 9). Still later, Bismillah asserted that he was made to wait nearly six hours for medical treatment on May 12, 2016. (*Id.* at 12).

Bismillah returned to MCI on or about May 15, 2016, and was placed in the infirmary. (*Id.*). The hospital had prescribed him Ranolazine, which he understood he was to continue taking once back at MCI. (*Id.*). The following day, nurses informed Bismillah that the Ranolazine had been ordered from the pharmacy. (*Id.* at 7). The day after that, Bismillah received his heart medications, absent the Ranolazine. (*Id.*). On May 18, 2018, Bismillah asked about his missing medication and was told Defendant Dr. Khan had discontinued it. (*Id.*). When Bismillah attempted to inquire further, Defendant Nurse Metz prevented him from doing so. (*Id.*). On May 19, 2016, Bismillah made another inquiry regarding his medications, this time because his aspirin was missing. (*Id.*). He was told his missing medications, at least the aspirin, would be delivered on May 23, 2016. (*Id.*). Presumably, Bismillah received his medications, because he alleges nothing further concerning them.

Bismillah states that on or about May 17, 2016, he was "again released from isolation and the prison Infirmary" and placed in 2-Dorm, which he refers to as "the oven." (*Id.* at 11). Bismillah describes this as a disciplinary dorm of sorts. (*Id.*). Upon his arrival in this dorm, Defendant CO Crawford disrespected Bismillah when she yelled and swore at him. (*Id.*). Bismillah claims he was placed in this dorm "as a set-up aimed at provoking" him in an effort to get him back into segregation where Defendants can further subject him to "instances of deliberate indifference to his serious medical needs and condition." (*Id.*).

Bismillah states this dorm contains second-hand smoke, is noisy, hinders his attempts to rest, and restricts his movements. (*Id.*). Bismillah further claims Defendants are subjecting him to unsafe and unsanitary living conditions by placing him in this dorm, because this dorm houses 113 prisoners, has only six toilets, and is a close-custody dorm. (*Id.* at 12). Bismillah also claims the

7

dorm is extremely hot. (*Id.* at 16). Defendants have placed him in this dorm, Bismillah claims, in retaliation for pending litigation against them. (*Id.* at 12 &16).

Finally, Bismillah details an event that occurred after he moved into 2-Dorm. (*Id.* at 16). He alleges that "in a pre-planned scheme to retaliate against him" Defendants sent MCI's security response team ("SRT") into 2-Dorm to entrap him. (*Id.*). One day, the SRT took all the occupants of 2-Dorm to the gym at around 7:30 a.m. and kept them there until 2:30 p.m. (*Id.*). Bismillah later states Defendants kept the 2-Dorm occupants in the gym until 1:30 p.m. (*Id.*). Also in this account, Bismillah simultaneously claims he was kept in the gym for that period of time without his heart medications and that he had taken his full regimen of heart and blood pressure medications but was denied breakfast, thus making him ill. (*Id.*). Specifically, he states that after he was given a meal later in the day, he suffered from passing blood in his urine and convulsing from acid reflux. (*Id.*). Bismillah also claims there were no seats available in the gym, due to the overwhelming number of prisoners in the gym but notes that he was seated on a bench. (*Id.*). When he made it back to his dorm, Bismillah claims, the living areas of the African-Americans, including his, were destroyed. (*Id.*).

Even construing his allegations liberally, Bismillah fails to demonstrate he was under an imminent danger of serious physical injury at the time he filed his complaint. The bulk of Bismillah's claims pre-date the filing of his complaint on June 6, 2016. As such, they cannot qualify as conditions or threats that were existing dangers at the time he filed his complaint. *See Vandiver*, 727 F.3d at 585.

Bismillah does, however, allege a continuing conspiracy existing at the time he filed his complaint and continuing into the future. Bismillah claims Defendants have conspired to place him in 2-Dorm to provoke him, with the goal of putting him back into segregation and aggravating his heart condition. Additionally, Bismillah claims his placement in this dorm poses an imminent

8

danger because it has a disproportionately low number of toilets, is noisy, is not conducive to getting rest, restricts his movement, exposes him to second-hand smoke, and is extremely hot.

But none of these conditions rise to the level of imminent dangers of serious physical injury. First, Bismillah's claim that Defendants are conspiring to provoke him is not the kind of danger with which the three strikes rule is concerned. He has not alleged he is subject to an inescapable danger, because, despite Defendants' provocation, Bismillah remains responsible for his reaction to any such provocation.

Second, the dangers associated with 2-Dorm that Bismillah alleges do not pose an imminent danger of serious physical injury to him. I find that a disproportionately low number of toilets, noisy living area, restricted movement, and less rest than desired do not pose a danger of serious physical injury, less so an imminent danger. And Bismillah pleads no facts showing otherwise.

Likewise, he fails to show how his exposure to second-hand smoke and heat pose *imminent* dangers to him. He has not alleged any physical symptoms resulting from these conditions. He only makes conclusory allegations that these conditions "go against the healing process" and that the heat can result in death. (Doc. No. 1 at 11 & 16). And several courts have held, as I do today, that exposure to second-hand smoke and to high heat do not qualify as imminent dangers. *See Gibbs v. Santos*, No. 4:16-CV-12-DMB-JMV, 2016 WL 4919895, at *3 (N.D. Miss. Sept. 14, 2016); *Foster v. Unidentified Party*, 34 F. App'x 963, 2002 WL 663757, at *1 (5th Cir. 2002); *Johnson v. Mercer*, No. 4:13cv321-RH/CAS, 2013 WL 4549052, at * 1 (N.D. Fla. Aug. 28, 2013); *Wilson v. Riley*, No. 2:07-CV-891-WKW, 2007 WL 3120133, at * 1 (M.D. Ala. Oct. 23, 2007); *Sanders v. Melvin*, 873 F.3d 957, 960 (7th Cir. 2017); *In re Whitfield*, Misc. No. C-07-91, 2007 WL 2592816, at *2 (S.D. Tex. Sept. 5, 2007).

As such, I find Bismillah was not under imminent danger of serious physical injury at the time he filed his complaint. Thus, he does not qualify for that exception to the three strikes rule of the PLRA, and I now revoke his pauper status.

**Sanctions**

Having found Defendants' motion to revoke Bismillah's pauper status well-taken, I find their motion was not frivolous or filed in bad faith. *See* Fed. R. Civ. P. 11(b), (c). I therefore deny Bismillah's motion for sanctions. (Doc. No. 31).

## CONCLUSION

Accordingly, I grant Defendants' motion to accept their reply/response as timely filed. (Doc. No. 39). I deny Bismillah's motion for sanctions. (Doc. No. 31). And I grant Defendants' motion to compel immediate payment of full filing fees and for related relief under the "three strikes" provision of the PLRA. (Doc. No. 30).

I therefore revoke Bismillah's pauper status. Bismillah shall pay the remaining full filing fee due on this case within thirty days of the date of this opinion. Failure to pay his filing fees will subject Bismillah to dismissal of his case. In the interim, all remaining pending motions[2] are denied without prejudice. If Bismillah should pay the filing fee, the court will revisit the issues presented in the motions in due course by way of a scheduling order. Unless and until a scheduling order issues, no further pleadings or motions will be accepted in this case without prior leave by the court.

So Ordered.

s/ Jeffrey J. Helmick<br>United States District Judge

---

[2] Specifically, the court denies the following motions filed by Defendants: (1) motion to dismiss party (Doc. No. 15); (2) motion to dismiss second/consolidated response (Doc. No. 23); (3) motion to strike Bismillah's motion for joinder (Doc. No. 46); (4) motion to strike preliminary injunction and adverse claims (Doc. No. 52); (5) motion to strike Doc Nos. 50 & 51 (Doc. No. 53); and (6) motion to strike Doc. No. 56 and attachments (Doc. No. 60). And the court denies the following motions filed by Bismillah: (1) motion for leave to file third amended complaint (Doc. No. 24); (2) motion for joinder of parties (Doc. No. 27); (3) motion for restraining order and leave to supplement (Doc. No. 28); (4) motion for joinder and partial judgment on the pleadings (Doc. No. 35); (5) motion for leave to file amended claims and joinder of parties (Doc. No. 38); (6) motion for leave to file motion (Doc. No. 40); (7) motion for preliminary injunctive relief (Doc. No. 42); (8) motion for joinder of claims and parties (Doc. No. 45); (9) motion to compel (Doc. No. 47); (10) request for preliminary injunction (Doc. No. 49); (11) motion for leave to supplement claims (Doc. No. 54); (12) motion for status hearing (Doc. No. 55); and (13) motion for service, preliminary injunction, and appointment of counsel (Doc. No. 56).